# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DIAMONDHEAD CASINO CORPORATION,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11354 (JKS) |
| DIAMONDHEAD CASINO CORPORATION,<br><br>Appellant,<br><br>v.<br><br>EDSON ARNEAULT, *et al.*,<br><br>Appellees. | Case No. 1:25-cv-1018-MN |
| EUROPA CRUISES CORPORATION STOCK OWNERSHIP PLAN,<br><br>Appellant,<br><br>v.<br><br>EDSON ARNEAULT, *et al.*,<br><br>Appellees. | Case No. 1:25-cv-1021-MN |
| DEBORAH A. VITALE,<br><br>Appellant,<br><br>v.<br><br>EDSON ARNEAULT, *et al.*,<br><br>Appellees. | Case No. 1:25-cv-1022-MN |

**PETITIONING CREDITORS' OBJECTION TO EMERGENCY MOTION FOR STAY PENDING APPEAL OF APPELLANT, DIAMONDHEAD CASINO CORPORATION**

Edson Arneault, Kathleen and James Devlin, J. Steven Emerson, Emerson Partners, J. Steven Emerson as Successor to the J. Steven Emerson Roth IRA, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, Barry and Irene Stark ("Petitioning Creditors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Diamondhead Casino Corporation's (the "Debtor" or "Diamondhead") *Emergency Motion for Stay Pending Appeal of Appellant, Diamondhead Casino Corporation* (the "Motion"), filed on October 3, 2025 in the three above-captioned bankruptcy appeals.[1]  In support of this Omnibus Objection, the Petitioning Creditors aver as follows:

## PRELIMINARY STATEMENT

Thirty (30) days after the Bankruptcy Court denied the Debtor's request to stay the above-captioned bankruptcy case, the Debtor now brings this "emergency" Motion (mostly)[2] rehashing the same argues that Bankruptcy Court considered and rejected.  The Motion must be denied for several reasons.  First, as a Chapter 7 debtor, the Debtor lacks standing to bring this motion.  Second, the Motion is procedurally improper, as it does not comply with Federal Rule of

---

[1] Despite the title of the Motion, the Debtor is the appellant in only one (1) of the three (3) listed appeals, Case No. 25-cv-1018-MN.  A *Notice of Withdrawal of Appeal of Europa Cruises Corporation* Employee Stock Ownership Plan of was filed by Deborah A. Vitale on behalf of appellant Europa Cruises Corporation Employee Stock Ownership Plan the "ESOP") in the Bankruptcy Court stating an intent to withdraw Case No. 25-cv-1021-MN.  *See* Bankr. BANKR. D.I. 115.  The withdrawal notice, however, was not filed in the appeal itself.  Given that the Debtor, who apparently is taking direction from its former officer Ms. Vitale, listed the ESOP's appeal on its Motion, it is unclear whether Ms. Vitale intends to pursue the ESOP's appeal.

[2] The Debtor asserts that the Bankruptcy Court "clearly erred" on thirty-eight (38) issues, but only asserted the issue of the IRA's standing as a Petitioning Creditor when seeking a stay in the Bankruptcy Court.  As set forth more fully below, by not raising those other issues below, the Debtor has waived its ability to raise them now.

Bankruptcy Procedure 8007(b)(3)(B) and (C).  Finally, the Debtor cannot make the required showing for a stay of the bankruptcy case, as it is not likely to succeed on the merits of appeal, cannot show prejudice to itself, will cause instead prejudice to the Petitioning Creditors and other creditors of the Debtor's bankruptcy estate, and is not in the public interest.  If this Court does find a stay is appropriate—and it should not—the Debtor must be required to post a significant bond.

## FACTUAL BACKGROUND

### Procedural History

1.      On June 12, 2024, the Petitioning Creditors commenced this bankruptcy case by filing an involuntary petition (the "Involuntary Petition") under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") [Bankr. D.I. 1].  The Debtor filed a motion to dismiss (the "Motion to Dismiss") the Involuntary Petition or, in the alternative, convert the case to a case under Chapter 11 of the Bankruptcy Code [Bankr. D.I. 9].   In the Motion to Dismiss and in a Declaration in support of the Motion to Dismiss, the then-Alleged Debtor and Ms. Vitale, respectively, acknowledged that each Petitioning Creditor, including J. Steven Emerson, as Successor to the Steven Emerson Roth IRA (the "IRA"), were proper holders of debentures.  *See* Bankr. D.I. 9 at p. 3, Bankr. D.I. 9-1 at ¶ 44.

2.      An evidentiary hearing on the Motion to Dismiss was held on December 4, 2024, and January 16, 2025. The Court heard testimony from five witnesses and considered various exhibits admitted into evidence. The parties also filed post-trial briefs.

3.      On July 30, 2025, the Court issued a memorandum opinion (the "Opinion") [Bankr. D.I. 42] and an order (the "Denial Order") [Bankr. D.I. 43] denying the Motion to Dismiss.  A true and correct copy of the Opinion is attached hereto as **Exhibit A**.

4.       On July 31, 2025, this Court issued the Order for Relief in an Involuntary Case (the "Order for Relief") [Bankr. D.I. 45].

5.       On August 1, 2025, George L. Miller was appointed the Chapter 7 Trustee (the "Trustee") of the Debtor's bankruptcy estate [Bankr. D.I. 46].

6.       On August 13, 2025, a motion was filed purportedly on behalf of the Debtor titled "Motion of the Alleged Debtor, Diamondhead Casino Corporation, for a Stay of the Court's Opinion (BANKR. D.I. 42) and Order (Bankr. D.I. 43) Dated July 30, 2025 and Order (Bankr. D.I. 45) Dated July 31, 2025, Pending Resolution of the Appeal" [Bankr. D.I. 47] (the "Stay Motion"). The Stay Motion was filed by Robert D. Goldberg, allegedly on behalf of Diamondhead Casino Corporation.  Mr. Goldberg has not been retained by the Chapter 7 Trustee to act on behalf of the Debtor's estate.

7.       Also on August 13, 2025, a motion was filed, purportedly on behalf of the Debtor, titled Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders [Bankr. D.I. 48] (the "Original MTV/MTD").

8.       A brief in support of the Original MTV/MTD was filed concurrently with the Original MTV/MTD [Bankr. D.I. 49] (the "Brief in Support").

9.       A notice of appeal (the "Diamondhead Notice of Appeal") [Bankr. D.I. 50] was also filed on August 13, 2025, purportedly on behalf of the Debtor.

10.       On August 13, 2025, Deborah Vitale filed an omnibus Motion of Deborah A. Vitale for Leave to Intervene and be Heard in the Above Captioned Case; and Motion to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the

4

Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders; and Stay of

the Court's Opinion (BANKR. D.I. 42) and Order (Bankr. D.I. 43) Dated July 30, 2025 and Order

(BANKR. D.I. 45) Dated July 31, 2025, Pending Resolution of the Appeal [Bankr. D.I. 55] the

("Vitale Motion").  The Vitale Motion seeking to allow her to intervene in this bankruptcy case

and is also essentially a joinder to the Original MTV/MTD and Stay Motion, and incorporates the

Brief in Support.

11.    Ms. Vitale also filed a Notice of Appeal on behalf of herself on August 13, 2025

[Bankr. D.I. 57] (the "Vitale Appeal").

12.    On August 15, 2025, Mr. Goldberg withdrew the Original MTV/MTD [Bankr. D.I.

61] but then filed a new document, purportedly on behalf of the Debtor, entitled "Motion of the

Alleged Debtor, Diamondhead Casino Corporation, to Vacate the Court's Opinion and Order

Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or,

Alternatively, to Alter and Amend the Opinion and Orders [Bankr. D.I. 63] (the "Operative

MTV/MTD").

13.    On August 28, 2025, Petitioning Creditors filed their *Omnibus Objection of*

*Petitioning Creditors to: (A) Motion of "Alleged Debtor", Diamondhead Casino Corporation, to*

*Vacate the Court's Opinion and Order Dated July 30, 2025 and Order dated July, 2025 and*

*Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders*

*[D.I. 63]; (B) Motion of the "Alleged Debtor", Diamondhead Casino Corporation for a Stay of the*

*Court's Opinion [D.I. 42] and Order [D.I. 45] Dated July 31, 2025, Pending Resolution of the*

*Appeal [D.I. 47]; (C) Motion of Deborah A. Vitale for Leave to Intervene and be Heard in the*

*Above Captioned Case and Joinders to "Alleged Debtor" Diamondhead Casino Corporation's*

*Motion to Vacate/Dismiss and Motion for Stay Pending Appeal [D.I. 55]* (the "Omnibus

Objection") [Bankr. D.I. 77].  A true and correct copy of the Omnibus Objection is attached hereto as **Exhibit B**.

**The Bankruptcy Court's Ruling**

14.     On September 3, 2025, the Bankruptcy Court heard argument on the Debtor's and Vitale's stay motions and issued an oral ruling that same day denying the Stay Motions.  A true and correct copy of the hearing transcript and oral ruling is attached hereto as **Exhibit C**.

15.     Following argument, and after going through the procedural history, the Bankruptcy Court first addressed the Petitioning Creditors' argument that both the Debtor and Vitale lacked standing to move for a stay pending appeal.  Ex. C. at 46-47.  The Bankruptcy Court assumed, without deciding, that the Debtor had standing to pursue a stay pending appeal.  *Id.* at 46.  The Court determined, however, that Vitale did *not* have standing.  *Id.* at 46-47.

16.     With respect to the merits of the Stay Motions, the Bankruptcy Court found that the Debtor was not likely to succeed on the merits.  *Id.* at 49-52.

17.     Significantly for this instant Motion, the Bankruptcy Court addressed the *sole argument* raised by the Debtor and Vitale to justify a stay pending appeal—the validity of J. Steven Emerson as successor to the Steven Emerson Roth IRA as a petitioning creditor.  *Id.* at 50.

18.     The Bankruptcy Court explained that Diamondhead, after filing its motion to dismiss the involuntary bankruptcy, conducted discovery and could have raised this issue at the evidentiary hearing on the motion to dismiss, but did not, nor did it raise the issue in post-trial briefing.  *Id.* at 50-51.  Rather, the Court noted that Diamondhead acknowledged that each of the Petitioning Creditors was a proper creditor. *Id.* at 51.

19. The Bankruptcy Court also noted that, the IRA is a valid holder of a consent judgment against the Debtor, which judgment was executed by Diamondhead. *Id.* Thus, [t]o the extent there was an issue, it should have been raised previously." *Id.*

20. Third, the Bankruptcy Court found that this was not newly discovered evidence. *Id.* Rather, the Court found that "[t]he parties acknowledge this alleged error has existed for years." *Id.*

21. Finally, and "most critical for purposes of this ruling", the Bankruptcy Court found that "even if there is some infirmity with respect to [the IRA's] standing as a creditor of Diamondhead, and assuming for purposes of the pending motion he was disqualified, *the alleged infirmity is immaterial because …. there remain seven undisputed eligible petitioning creditors and only three … are needed to satisfy Section 303's requirements*." *Id.* at 51-52 (emphasis added).

22. As such, the Bankruptcy Court ruled that even if the IRA was disqualified, "the outcome of this Court's ruling would not change" because there remain a sufficient number of unchallenged creditors to satisfy the Bankruptcy Code's requirement for the number of petitioning creditors. *Id.* at 52.

23. Turning next to the movants' arguments regarding irreparable harm, the Bankruptcy Court found that the alleged harms were speculative. *Id.* at 53. Additionally, the Bankruptcy Court noted that "[t]he sole purpose of the Chapter 7 bankruptcy is to do what Diamondhead said it was doing, without success… monetizing the property." *Id.* at 53-54. Thus, the movants could not show any non-speculative harm to the Debtor. *Id.* at 54.

24. In contrast, the Bankruptcy Court found that a stay would be prejudicial to the Debtor's creditors. *Id.* The Bankruptcy Court explained that, "for 20 years Diamondhead sought to develop or sell the property, or to pursue a joint venture or financing, without success." *Id.* The

Bankruptcy Court further noted that "Diamondhead's SEC filings show the assets of the company are steadily decreasing as liabilities increase. Diamondhead has no operations, no source of income, and is unable to pay its debts as they become due." *Id.* In addition to the Petitioning Creditors, the Court note that there "are other debentures and loans accruing interest, additional administrative expenses continue to accrue." *Id.* at 55.

25.     Finally, the Court found that the public interest favored denial of a stay because "[b]ankruptcy is a public forum so all creditors will have full insight and an ability to participate in the process, and have visibility and transparency with respect to the trustee's actions." *Id.*

26.     On October 3, 2025, the Debtor filed the instant Motion in all three appeals.[3]

27.     On October 8, 2025, this Court set Petitioning Creditors' deadline to respond to the Motion by no later than October 14, 2025 and the Debtor's reply to be filed no later than October 17, 2025.

**Other Facts Relevant to the Motion**

28.     The Debtor, a Delaware corporation, has had no operations since 2000. The Debtor is a holding company whose most valuable asset is its interest in its wholly owned subsidiary, Mississippi Gaming Corporation ("MGC"). MGC owns approximately 400 acres of undeveloped land located on Interstate 10 in Diamondhead, Mississippi (the "Property"). On August 21, 2014, the Mississippi Gaming Commission granted Gaming Site Approval to MGC for a 50-acre gaming site on the east end of the Property.

29.     Prior to the Order for Relief, Ms. Vitale was the President, Chief Executive Office, Secretary, Treasurer and Chief Financial Officer of the Debtor. She is also a licensed attorney.

---

[3] As noted in footnote 1, *supra*, it is unclear whether the ESOP intends to pursue its appeal. Currently, the ESOP is not represented by counsel.

30.    For over 20 years, Diamondhead and Ms. Vitale have sought to develop or sell the Property, and/or pursue a joint venture or financing for the development of the Property, without success.  There are currently 21 liens on the Property totaling approximately $8.5 million.

31.    To raise capital to pay on-going costs and expenses, Diamondhead borrowed from various individuals and entities. The Petitioning Creditors, including the IRA, are each holders of collateralized convertible senior debentures (collectively, the "Debentures") memorializing the terms of the loans made to the Alleged Debtor. Each of the Debentures provides that it shall bear interest at a fixed rate of 4% per annum and payable annually on March 1 of each year.  The Debentures are secured by a Land Deed of Trust secured by the Property.

32.    In or about December 2019, Diamondhead entered into a settlement agreement with, among others the J. Steven Emerson Roth IRA (the Settlement Agreement.  *See* Trial Ex. 43. The Settlement Agreement was executed by Ms. Vitale on behalf of Diamondhead.  As part of that Settlement Agreement, Diamondhead agreed that "for purposes of this Settlement Agreement only, *the Holder of the Debentures issued to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA shall be deemed to be the J. Steven Emerson Roth IRA*."  Settlement Agreement at 3 (emphasis added).

33.    The J. Steven Emerson Roth IRA (the "IRA") was also defined as one of the Plaintiffs.  *Id.*

34.    The Settlement Agreement also provided that, if no sale of the Property occurred on or before December 31, 2021, that the Plaintiffs (which includes the IRA) "will be entitled to a Judgment" related to amounts due under the Debentures.

35.    The parties (including the IRA) subsequently entered into an amendment to the Settlement Agreement, effective as of April 1, 2022, providing that if the Petitioning Creditors

were not paid in full by March 31, 2023, they were authorized to enter into an agreed upon consent judgment.  *See* Trial Ex. 44 (the "Amendment").  The Amendment included the IRA and Diamondhead.  *Id.* The Amendment was executed by Ms. Vitale on behalf of Diamondhead.  *Id.* [4]

36.    Although the Debtor now asserts that  it did not know until after all the briefs were filed in this case that there was a discrepancy with respect to the Holders of the Debentures and the parties named as Petitioners in this bankruptcy case,"[5] on April 13, 2023, Vitale wrote the following email to Jeffrey Wurst, the Petitioning Creditors' attorney, with the subject "Diamondhead: Emerson IRA" (the "Acknowledgement Email"):

> Jeff:
> ***I am doing the list of payees to be sure they match the Holders in the notes.***
> For Emerson's IRA, you gave me **"J. Steven Emerson, as Successor to Steven Roth IRA."**
> However, there is no Steven Roth IRA in my documents.
> This name does not match the name of the IRA in my Debenture.
> ***I have fixed it. See the attached.***
> ***Please have Steve sign the attached clean Acknowledgement.***
> Deborah

*See* Exhibit B, hereto at Exhibit A (emphasis added and in original).

37.    Attached to the Acknowledgement Email were redline and clean acknowledgment forms from Ms. Vitale, to be executed by "J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA)", stating "), stating "**the amount necessary to pay, in full, the debt owed to J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA) by Diamondhead Casino Corporation which is secured by a Deed of Trust on real Property owned by Mississippi Gaming Corporation**

---

[4] The Amendment included a form of Consent Judgment acknowledging Diamondhead's obligations to the IRA.  *Id.*
[5] Bankr. D.I. 49-7 at ¶ 26.

located at 7051 Interstate 10, Diamondhead, Mississippi 39525, which is located in Hancock County, Mississippi, is $648,013.98" and authorizing "David A. Wheeler, Trustee, to cancel the Deed of Trust as to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA upon the disbursement of the foregoing payoff to me."

38.    Mr. Emerson executed the acknowledgement form (the "Acknowledgment") on April 13, 2023.  *Id.*, at Exhibit B.

39.    On April 13, Mr. Wurst sent the Acknowledgement, together with other documents, to Ms. Vitale. *Id.*, at Exhibit C.

40.    On April 14, 2023, Mr. Wurst again sent the Acknowledgement, together with other documents, to Ms. Vitale.  *Id.* at, Exhibit D.

41.    No payment was ever received, so the Deed of Trust was never cancelled.

42.    After failing to reach further agreement with Diamondhead for the Petitioning Creditors' forbearance, in July 2023, the Petitioning Creditors moved to reopen the District Court Action, vacate the dismissal, and enter judgment on consent.

43.    On September 20, 2023, the District Court entered a consent judgment ("Consent Judgment") in favor of Petitioning Creditors, and against Diamondhead in the principal amount of $1,500,000, plus interest and $175,000 in attorneys' fees and costs.  Trial Ex. 53.

44.    The Consent Judgment is in the name of the IRA and was executed on behalf of Diamondhead by Ms. Vitale.

45.    Accordingly, the J. Steven Emerson Roth IRA is the holder of a valid consent judgment against Diamondhead Casino Corporation entered on the District Court docket on September 20, 2023.    That Consent Judgment was executed on behalf of Diamondhead by Ms. Vitale.  Diamondhead has not sought relief from that judgment.

46.     It is undisputed that the IRA "*does* have a judgment against the Debtor."

47.     Diamondhead (and Ms. Vitale) had the opportunity to challenge Mr. Emerson's standing, as successor to the IRA, to properly be a petitioning creditor on the Involuntary Petition. The parties took four (4) depositions and had the opportunity to conduct written discovery.   The Debtor (and Ms. Vitale) chose not take discovery on this issue.   Instead, as set forth below, Diamondhead and Ms. Vitale would admit during this bankruptcy case that Emerson was a Debenture holder and was properly a petitioning creditor.

48.     On June 12, 2024, in addition to J. Steven Emerson as Successor to the J. Steven Emerson Roth IRA, Petitioning Creditors Edson Arneault, Kathleen and James Devlin, J. Steven Emerson, Emerson Partners, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, Barry and Irene Stark commenced an involuntary bankruptcy against Diamondhead.   The Petition inadvertently left of the "J." in front of the IRA, such that it was labeled the "Steven Emerson Roth IRA" instead of the "J. Steven Roth IRA".   As set forth below, this is a mere scrivener's error.

39.     Movants do not challenge the validity of the status of any other Petitioning Creditor as a valid creditor of Diamondhead, other than to argue that 3 of the 7 other Petitioning Creditors had knowledge that the IRA was not a valid Debenture holder and, therefore, do not assert that those creditors should be disqualified.

## I.     THE DEBTOR LACKS STANDING TO BRING THE MOTION

50.     The issue of standing is a dispositive, threshold issue that the Debtor cannot meet.

51.     Because a Chapter 7 Trustee has been appointed, only the Trustee can act on behalf of the Debtor.

52.     As the United States Court of Appeals for the Tenth Circuit explained:

"When a corporate bankruptcy is converted from Chapter 11 to Chapter 7, a sea change takes place." *In re C.W. Mining Co.*, 636 F.3d 1257, 1265 (10th Cir. 2011). Once a corporate entity "enters Chapter 7 bankruptcy and a trustee is appointed ... its legal purpose becomes vastly different." *Id.* at 1264. Unlike Chapter 11, which aims to "reorganiz[e] the bankruptcy estate for the shareholders as well as the creditors," "Chapter 7 shifts the focus to creditors" alone "and protects the creditors by appointing a trustee to control the estate." *Id.* at 1265 (citation omitted).

"After [the debtor] enter[s] into Chapter 7 bankruptcy and a trustee [i]s appointed, [the debtor's] former management's only role [i]s 'to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors.'" *Id.* at 1263 (*quoting Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985)). "Authority to make legal decisions, like all other business decisions, passe[s] to the Trustee alone." *Id.* "[C]orporate officers are 'completely ousted' once a trustee has been appointed." *Id.* (quoting Weintraub, 471 U.S. at 353, 1986).

*In re Bear Creek Trail, LLC,* 35 F.4th 1277, 1280 (10th Cir. 2022).  *See also* Fed. R. Bankr. P. 6009 ("With or without court approval, the trustee ... may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding on behalf of the estate before any tribunal.").

53.     The issue of standing to pursue a motion to stay pending appeal of an order converting a case from a chapter 11 to a chapter 7 was directly addressed by the United States District Court for the Southern District of New York in *In re 461 7th Ave. Market, Inc.*, 623 B.R. 681 (S.D.N.Y. 2020).  There, the court concluded that "the Debtor has no standing to seek a stay on its own behalf; rather, the application for a stay can be made only by the Trustee."  *Id.* at 691.

54.     Although the Bankruptcy Court in this instant appeal cited to *In re Betteroads Asphalt, LLC*, 610 B.R. 28 (Bankr. D.P.R. 2019),[6] the Bankruptcy Court did not make a determination that Diamondhead had standing to pursue a stay pending appeal.  Rather, the

---

[6] *See* Ex. C at 46.

Bankruptcy Court assumed, without deciding, that Diamondhead had standing, and proceeded to deny the motion.

55.    *Betterroads*, however, is not on point.  *Betterroads* is a bankruptcy court decision that does not address the question of standing, as it does not appear it was raised. Rather, the opinion analyzed a debtor's motion for a stay pending appeal (while rejecting the motion) without considering whether the debtor had standing to move for a stay. *Betteroads* , 610 B.R. 28.

56.    Accordingly, Petitioning Creditors respectfully submit that this Court should follow the District Court opinion in *461 7th Ave. Market* and hold that a Chapter 7 debtor, lacks standing to move for a stay pending appeal once a Chapter 7 trustee is appointed, as is the case here.[7]

57.    Because the Debtor lacks standing to bring this Motion, the Motion must be denied.

## II.    THE DEBTOR HAS NOT COMPLIED WITH BANKRUPTCY RULE 8007(b)(3)

58.    Bankruptcy Rule 8007(b)(3) contains three requirements that a movant seeking relief from stay in the District Court must include:

(A) the reasons for granting the relief requested and the facts relied on;

(B) affidavits or other sworn statements supporting facts subject to dispute; and

(C) relevant parts of the record.

59.    Here, the Debtor has failed to comply with Rule 8007(b)(3)(B) by failing to include any affidavit or other sworn statement supporting the facts subject to dispute.

60.    Further, the Debtor has failed to include all relevant parts of the record.

61.    For these reasons, too, the Motion must be denied.

---

[7] Debtor's counsel has not been retained by the Trustee to act on behalf of the Debtor.  As authority to act on behalf of the Debtor rests solely with the Trustee, and because the Trustee has not authorized the filing of the Motion, it must be denied

## III.    THE DEBTOR CANNOT SATISFY THE *REVEL* FACTORS

62.    Even if the Debtor did have standing, and even if it complied with the applicable rules, the Motion must still be denied, as the Debtor cannot meet any of the factors required to impose a stay of this bankruptcy case.

63.    "In reviewing the Bankruptcy Court's denial of a stay pending appeal, the Court applies an abuse of discretion standard." *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 28 (D. Del. 2011). "An abuse of discretion exists where judicial action 'rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Id.* (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir.2004)).

64.    Motions for stays pending appeal are governed by Bankruptcy Rule 8007. "The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). A stay pending appeal is an "extraordinary remedy." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)). The movant bears the burden of establishing that imposition of a stay is warranted. *In re Decade, S.A.C., LLC*, 2023 WL 1471286, at * 5 (D. Del. Feb. 2, 2023).

65.    In determining whether the moving party met its burden, courts in the Third Circuit consider the following four factors: (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc*., 802 F.3d 558, 565 (3d Cir. 2015). "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable

harm." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because all four factors are

interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) ***and*** (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis
> .

*Id.* at 571 (internal quotations and citation omitted) (emphasis in original).

66.    "To establish irreparable harm, a stay movant 'must demonstrate an injury that is

neither remote nor speculative, but actual and imminent.' " *Revel* at 571 (*quoting Tucker Anthony*

*Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).  Harm is not irreparable if there is

corrective relief available later in the ordinary course of litigation.  *In re Maxus Energy Corp.*, 633

B.R. 215, 221 (Bankr. D. Del. 2021).  Mere injuries, however substantial, in terms of money, time

and energy necessarily expended in the absence of a stay, are not enough. The possibility that

adequate compensatory or other corrective relief will be available at a later date, in the ordinary

course of litigation, weighs heavily against a claim of irreparable harm.

### A.    The Debtor Cannot Make a Strong Showing of Likelihood of Success on the Merits

67.    As the Bankruptcy Court found below, the Debtor cannot show a "strong

likelihood' of success on the merits.

68.    <u>First</u>, the Debtor and Vitale lack standing to prosecute their respective appeals.

<u>Second</u>, even if they had standing, there is no merit to their claims.

69.    In addition to not having standing to prosecute the Motion, Vitale and the Debtor

lack standing to pursue any appeal of the denial of the Motion to Dismiss.  The  Tenth  Circuit's

reasoning outlined in paragraph 52, *supra*, is dispositive as to the Debtor.  As to Vitale, Bankruptcy Code Section 303(d) and Federal Rule of Bankruptcy Procedure 1011(a) permit only the alleged debtor to contest an involuntary petition.  *See* 11 U.S.C. § 303(d); Fed. R. Bankr. P. 1011(a).  *See also In re Schiff Fine Art, LLC*, 2024 WL 1085148, at *7 (Bankr. S.D.N.Y. Mar. 12, 2024 (agreeing that "only a debtor may contest an involuntary petition"); *In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 (Bankr. S.D.N.Y. 2006) (finding that a non-debtor could not move to dismiss an involuntary proceeding on 303(b) petitioning creditor eligibility grounds because "the sufficiency of an involuntary petition may only be challenged by the debtor and not by creditors or third parties [...].").  As such, neither the Debtor nor Vitale are likely to succeed on the merits of their respective appeals, because they lack standing.  The Debtor points to no cases to the contrary.

70.     Even if the Debtor or Vitale did have standing, they are still unlikely to succeed on the merits.

71.     Although the Debtor now asserts thirty-eight (38) different issues it believes it has a likelihood of success on the merits,[8] the Debtor only raised the issue of the validity of the IRA's standing as a Petitioning Creditor when it and Vitale filed their respective motions to stay in the Court below.

72.     Accordingly, the Debtor has waived any right to assert any issues unrelated to the validity of the IRA's standing as a Petitioning Creditor as part of this Motion.  *See In re Venco, LLC*, 706 F. Supp.3d 464, 477 n. 10 (rejecting Trustee's arguments on appeal not raised in Bankruptcy Court).

73.     Additionally, assuming *arguendo* this Court can consider the additional arguments not raised below, by merely reciting the issues on appeal, without further explanation, the Debtor

---

[8] *See* Motion at 8-14.

has forfeited those arguments. *See, e.g. Jacobs v. City of Phila.*, 2025 WL 560626, at *3 (3d Cir. Feb. 20, 2025) (nonprecedential) ("We do not consider undeveloped arguments."); *ECB USA, Inc. v. Savencia, S.A.*, 2020 WL 5369076, at *4 (D. Del. Sept. 8, 2020) ("[C]ursory arguments not fully developed by the parties are waived."); *Purewick Corp. v. Sage Prods., LLC,* 666 F. Supp. 3d 419, 441 (D. Del. 2023) ("[A]rguments ... not squarely argued[ ] are considered [forfeited].") (some alterations in original); *Ammar v. McDonough*, 2025 WL 692084, at *13 (D. Del. Mar. 4, 2025) (finding plaintiff's "cursory contention is insufficient to establish that Plaintiff's work assignments constitute adverse employment actions.").

74.    Due to the cursory nature of the assertions, the Debtor has not come close to meeting its burden that it is likely to succeed on appeal or that, even if successful, the alleged error is material and would change the Bankruptcy Court's ruling.

75.    For example, with respect to the so-called value of the Property, the Bankruptcy Court found the value to be "inconclusive," noting that "no expert testimony was presented, nor were valuations, appraisals, or letters of intent admitted into evidence, for the purpose of showing the appraised value of the Property."[9]   The Debtor does not explain why the Bankruptcy Court's determination was incorrect, nor how if incorrect, it was change the outcome of the Bankruptcy Court's decision.

76.    The only issue the Debtor does more fully argue in this Motion is whether the Bankruptcy Court had "jurisdiction" over J. Steven Emerson, as Successor to Steven Roth IRA.

77.    The Debtor misleadingly argues, however, that "the Bankruptcy Court found the Debtor had an obligation to detect the fraud within twenty-one days of the service of the summons

---

[9] Opinion at 5.

on the Company." Motion at 15. The Debtor does not cite to a portion of the ruling in support of this statement, nor could it, as the Court did not make that determination.

78.    Rather, the Court asked whether the parties had an opportunity to take discovery: "Did you conduct discovery in conjunction with your motion to dismiss this case? My recollection is there was approximately six (6) months between the filing and the involuntary and the … evidentiary hearing." Opinion at 12.

79.    It was later pointed out that, prior to the evidentiary hearing, four (4) depositions – were taken, including two of Petitioning Creditors' witnesses. *Id.* at 36:21-37:2. *See also id.* at 45 ("The parties completed discovery and briefing on the motion to dismiss.").

80.    The Motion does not argue why the Bankruptcy Court was incorrect in determining, among other things, (1) that after filing its motion to dismiss the involuntary bankruptcy, the Debtor conducted discovery and could have raised this issue at the evidentiary hearing on the motion to dismiss, but did not, nor did it raise the issue in post-trial briefing, Opinion at 50-51; (2) that Diamondhead acknowledged that each of the Petitioning Creditors was a proper creditor, *Id.*, that the evidence presented was not newly discovered evidence, as the Debtor had known of this alleged issue for years, id. at 51; (3) the IRA is a valid holder of a consent judgment against the Debtor, which judgment was executed by Diamondhead; and (4) most importantly, "even if there is some infirmity with respect to [the IRA's] standing as a creditor of Diamondhead, and assuming for purposes of the pending motion he was disqualified, *the alleged infirmity is immaterial because .… there remain seven undisputed eligible petitioning creditors and only three … are needed to satisfy Section 303's requirements*." *Id.* at 51-52 (emphasis added).

81.     As such, the Motion does not explain how, even if successful on this issue—which is unlikely—the success would change the outcome of the Bankruptcy Court's dismissal of the Debtor's motion to dismiss the involuntary bankruptcy.

82.     Indeed, given that the Debtor failed to previously challenge Mr. Emerson's or the IRA's standing as a Debenture holder—and in fact acknowledged it—the Debtor and Vitale are unlikely to prevail on appeal.

83.     This factor therefore weighs heavily in favor of denying the Motion to stay pending appeal.

**B.     The Debtor Will Not be Irreparably Harmed**

84.     As noted by the Bankruptcy Court, the Debtor has not put forth a non-speculative harm if a stay is not granted.  None of the Debtor's alleged harms are supported by any evidence.

85.     Indeed, the sole purpose of the Chapter 7 bankruptcy is to do that which the Debtor, through Ms. Vitale, stated they were going to do: monetize the Diamondhead Property.

86.     But other than halting a potential stay, the Debtor does not explain how staying the bankruptcy case—meaning the Debtor remains in bankruptcy—would prevent irreparable harm.

87.     The Debtor merely argues, without evidence, that a sale of the Property *may* result in a lower price and that, if the Property is sold, the appeal would become moot.

88.     "The possibility that an appeal may become moot does not alone constitute irreparable harm for purposes of obtaining a stay."  *In re Nuverra Environ. Solutions, Inc.*, 2017 WL 3326453, at * 4 (D. Del. Aug. 3, 2017); *Regal Ware, Inc. v. Global Home Prods., LLC*, 2006 WL 2381918, at *1 (D. Del. Aug. 17, 2006) ("[T]he fact that [the movant's] appeal could be rendered moot ... does not in and of itself constitute irreparable harm.")

89.     Thus, this factor also weighs heavily in favor of denying the motions to stay pending appeal.

**C.    Other Parties Would Be Substantially Harmed by a Stay**

90.     In contrast, the harm to the Debtor's creditors is not speculative.

91.     A stay of the bankruptcy case would merely delay the inevitable sale of the Diamondhead Property.  At the same time, interest would continue to accrue on the amounts owed to all Debenture holders and holders of other liens.  Additional administrative expenses would also accrue with no hope that the bankruptcy case is ultimately dismissed, because there would still be at least four (4) valid Petitioning Creditors.

92.     Staying these appeal would therefore substantially harm the Debtor's creditors.

93.     This factor also favors denying the motions to stay pending appeal.

**D.    A Stay is Not in the Public Interest**

94.     A stay would not be in the best interests of the public.

95.     Rather, it would be in the public interest to preserve the ability of creditors, of which there may be many, to obtain repayment of their debts, including the judgments which precipitated the case.  Further, as noted by the Bankruptcy Court, the bankruptcy process is transparent and gives all creditors an opportunity to be heard.

96.     The Motion therefore should be denied.

**E.    If A Stay is Granted, The Debtor Must be Required to Post a Substantial Bond**

97.     While no stay should be granted, if this Court does grant a stay, a sizeable bond should be required before any stay take effect.

98.     As this Court stated in *In re Tribune*:

In determining whether a bond should be ordered, the court looks to whether the bond would be necessary to protect "against diminution in the value of property pending appeal" and to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." Moreover, the posting of a bond "guarantees the costs of delay incident to the appeal." In analyzing whether to order movants to post a bond in support of a stay pending an appeal of a bankruptcy court order, district courts have obtained guidance from Federal Rule of Civil Procedure 62(d), which requires appellants to post a bond when appealing a lower court order absent "exceptional circumstances."

477 B.R. 465, 478 (Bankr. D. Del. 2012) (citation omitted).

99.     According to its 10-Qs, the Alleged Debtor accrues $400,000 in additional liabilities every three (3) months. Assuming the appeal lasted 18 months—a conservative estimate—a bond of at least $2.4 million would be necessary to prevent further diminution of the value of the estate.

## CONCLUSION

Wherefore, for the foregoing reasons, this Court should deny the Motions.

October 14, 2025                          Respectfully submitted,

                          **ARMSTRONG TEASDALE LLP**

                          */s/ Jonathan M. Stemerman*
                          Jonathan M. Stemerman (No. 4510)
                          1007 North Market Street, Third Floor
                          Wilmington, Delaware 19801
                          Telephone: (302) 416-9670
                          jstemerman@atllp.com

                          *Counsel to the Petitioning Creditors*